tained by the defeated party from those who would be naturally reluctant to admit their own wrongdoing, and fairness to litigants can best be assured if no opportunity is afforded for unfair dealing, and all intercourse between judge and jury concerning the case be, of necessity, in public. This rigid rule in particular instances may work hardship, but in the majority of cases it is salutary. In Taylor v. Bettsford, 13 Johns. 487, in reversing a judgment because in the absence of the parties the justice had gone to the jury room and answered some question about the case, the supreme court said, "Whether the information given by the justice was material, or had any influence upon the verdict, is a question which we will not inquire into." In People v. Linzey, 79 Hun, 23, 29 N. Y. Supp. 560, the justice went to the jury room, and, in reply to a question, said the charge against the prisoner was petit larceny. This was correct. The county court of Ontario county affirmed the conviction, but the general term, Fifth department, set it aside, saying (page 27, 79 Hun, and page 563, 29 N. Y. Supp.), "It is not incumbent upon the appellant to show that he has been prejudiced, in order to entitle him to a new trial." In High v. Chick, 81 Hun, 100, 30 N. Y. Supp. 652,—a Genesee county case,—the justice entered the jury room and correctly answered a question concerning the effect of a verdict upon the note in suit. The county court held that the answer was correct and not misleading, and affirmed the justice. See opinion, General Term Cases, vol. 739, Rochester Library. But the general term followed People v. Linzey and Taylor v. Bettsford, and reversed the judgment, saying, "The rule is very strict, and forbids any communication whatever by the court to the jury after the cause has been submitted to the latter, except in open court, and, where practicable, in presence of counsel in the case." And these cases are cited with approval upon this point in Kehrley v. Shafer, 92 Hun, 196, 36 N. Y. Supp. 510. The well-known probity and fairness of the justice who tried this case furnish assurance that in this particular instance there was no intention to influence the jury, and the respondent offered to read the affidavits of the jurors that they were not prejudiced by the interview. But I see no way to sustain the judgment, under the precedents cited, and therefore the judgment is reversed.

Judgment reversed.

---

(31 Misc. Rep. 484.)

## In re WHITE.

(Surrogate's Court, New York County.  May, 1900.)

NEXT OF KIN—APPLICATION FOR DISTRIBUTION—PROOF.

> Where, in an application for a distributive share in the estate of decedent, in the hands of the city chamberlain, by the uncles and aunts of deceased, as her next of kin, it was not proven that decedent's brother was not living, the petitioners were not entitled to such estate.

Petition by uncles and aunts for distributive share in the estate of Mary M. White, deceased. Denied.

Julian B. Shope, for alleged next of kin, claiming a share of estate.
John Whalen, Corp. Counsel, for public administrator.

FITZGERALD, S.   The deceased died about December 3, 1885, intestate, leaving certain personal property.   Letters of administration were issued to the public administrator on January 9, 1886; and on January 27, 1891, the account of said administrator was duly settled, and a decree entered whereby the sum of $1,530.90 was directed to be paid to the city chamberlain.   The petitioners herein reside in Ireland, and are two brothers and two sisters of Edward Malone, who, it is claimed, was the father of the decedent, and who died before the decease of said Mary M. White.   Said petitioners ask that a distributive share of the said sum in the hands of the city chamberlain, due them as next of kin, be paid over to them.   Decedent was Mary Malone, daughter of Edward Malone and Bridget, his wife, whose maiden name was White; and the said decedent assumed the name of White, and was known in Ireland as Mary White, and in this country as Mary M. White.   The said deceased never married, and had a brother named John Malone.   It is admitted that the deceased came to this country in 1851.   At the time of making a deposit in the Seamen's Bank for Savings, in 1868, said decedent stated that she had a brother, John, and no sisters.   There is no evidence that said brother has been sought in this or in any other country, and the sole testimony in this matter was that no inquiry was made for said John Malone at last known place of residence of said deceased.   The interrogatories and cross interrogatories seem to identify the deceased as Mary Malone, of Raheen, Kilcooney, county of Kings, Ireland, whose parents died during the famine, and who came to this country some two years after with her brother, John, and that neither have been seen since or heard from by those in Ireland.   The exceptions to the second, third, sixth, and seventh findings are overruled.   The exception to the eighth finding is sustained.   The exception to the fourth is sustained in so far as it relates to said brother John, and that he died here during the lifetime of the decedent, and unmarried.   The referee should have found that the said brother John is still living.   The exception to the fifth finding is sustained, to the extent that the said brother should be included in decedent's only next of kin, and, except as herein stated, the referee's report is confirmed.   As a result, the present application must be denied, with leave to the petitioner to renew his motion upon adducing sufficient evidence to raise the presumption of the death of John Malone, with or without next of kin or legal representatives. In re Tobin's Estate, 15 N. Y. St. Rep. 749; Lawson, Pres. Ev. 264, rule 44, et seq.

Application denied.